IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BERNARD MCKINLEY,               )
                                )
            Plaintiff,          )
                                )
vs.                             )   Case No. 3:14-CV-1137-NJR-DGW
                                )
JOSHUA SCHOENBECK, LANCE        )
PHELPS, CHAD HASEMEYER, and     )
JACQUELINE LASHBROOK,           )
                                )
            Defendants.         )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Bernard McKinley, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. §1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). McKinley claims that he was subjected to retaliatory actions, including placement in administrative detention,[1] in retaliation for providing insufficient information to internal affairs officers regarding an investigation and filing a lawsuit. McKinley also alleges that, while he was in administrative detention, he was placed in cells with unsanitary and unlivable conditions.

The Court screened McKinley's amended complaint pursuant to 28 U.S.C. § 1915A and allowed him to proceed on the following claims:

---

[1] In his second amended complaint, McKinley uses the terms "investigative confinement," "administrative detention," and "administrative segregation" synonymously (*see generally* Doc. 43). In this Memorandum and Order, the Court will use the term "administrative detention."

Count One:   Defendants Phelps and Schoenbeck retaliated against McKinley for providing negative answers to their questions and for his religious beliefs by placing him in segregation;[2]

Count Two:   Defendant Phelps and Schoenbeck retaliated against McKinley for filing lawsuits by placing him in administrative segregation, using excessive force against him, and thwarting his plans to marry; and

Count Three: Defendant Phelps and Schoenbeck subjected McKinley to unconstitutional conditions of confinement.

On July 2, 2015, McKinley was granted leave to file a second amended complaint that added Chad Hasemeyer and Jacqueline Lashbrook as Defendants to Count One (*see* Docs. 42 and 43). Defendants then filed the motion for summary judgment and memorandum in support that are now before the Court (Docs. 94 and 95), to which McKinley filed a timely response (Doc. 105). Having carefully considered the briefs and all of the evidence submitted by the parties, for the reasons set forth below, the Court grants Defendants' motion for summary judgment (Doc. 94).[3]

## FACTUAL BACKGROUND

McKinley's claims in this matter stems from a series of interviews Defendant Chad Hasemeyer conducted with McKinley while Defendant Hasemeyer was the sergeant of the Intelligence Unit at Menard. These interviews took place in July and August 2012 (Deposition of Plaintiff Bernard McKinley, Doc. 95-1, pp. 8-9; *see* Affidavit

---

[2] In his second amended complaint, McKinley makes no allegation with respect to his religious beliefs and, at his deposition, McKinley affirmatively indicated that he was no longer setting forth a claim related to retaliation for his religious beliefs (*see* Doc. 95-1, pp. 56-57). As such, the Court will not make any further reference to this claim, finding that it is no longer before the Court.

[3] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate names of the following defendants: "J. Lashbrooks" should be "Jacqueline Lashbrook," and "Chad Hasameyer" should be "Chad Hasemeyer."

of Chad Hasemeyer, Doc. 95-2, ¶¶ 1, 4, 7, 16). Although the interviews were conducted by Defendant Hasemeyer, Defendants Lashbrook, Schoenbeck, and Phelps were all present at times during the interviews (Doc. 95-1, pp. 10-13).

There are disputes as to what was discussed during these interviews, however, because he is the non-movant, the Court construes the facts in McKinley's favor. *See Chaib v. Geo Group, Inc.*, 819 F.3d 337, 341 (7th Cir. 2016) (citations omitted). According to McKinley, during these interviews he was asked to provide information regarding certain individuals and their involvement in security threat groups ("STGs") (Doc. 95-1, pp. 14-15; Doc. 105, pp. 7-8). McKinley was questioned about a tattoo of a cobra on his arm, which he admitted is a symbol that may be associated with the Spanish Cobras, an STG, but denied that the tattoo is a reflection of his personal involvement with the Cobras. (Doc. 95-1, pp. 38-42). McKinley said these interviews were attempts to make him a confidential informant (Doc. 95-1, p. 20; Plaintiff's Second Amended Complaint,[4] Doc. 43, p. 8).

Following his interview on July 18, 2012, when McKinley indicated he did not have the information sought by Defendants, he was placed under investigative status in administrative detention and, as a result of his placement in administrative detention, he lost his job in dietary (Doc. 43, p. 8; Doc. 95-1, pp. 19-20; *see also* Affidavit of Chad Hasemeyer, Doc. 95-2, ¶ 15). On or about August 1, 2012, McKinley was again interviewed by Defendant Hasemeyer (with at least two of the other Defendants

---

[4] The Court makes reference to McKinley's second amended complaint (Doc. 43) as evidence, because it has been verified by McKinley and includes a declaration under penalty of perjury (Doc. 43, p. 21), and McKinley refers to this document a number of times in response to questions raised at his deposition. *See Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

present) (Doc. 43, p. 8; Doc. 95-2, ¶ 16). McKinley again indicated he did not have the information they sought, and he refused to become their confidential informant (Doc. 43, p. 8; Doc. 105, p. 8). Defendants then told McKinley "they could be his best friend or worse [*sic*] nightmare" and advised McKinley that he "better give them something to go off of in regard to information" (Doc. 43, p. 8).

McKinley was released from administrative detention on August 6, 2012, but his job was not reinstated (Doc. 43, p. 8). McKinley was subsequently placed back in administrative detention on August 24, 2012 (Doc. 43, p. 8). At some point during his placement in administrative detention, Defendant Lashbrook walked by McKinley's cell and told McKinley that for inmates "who refuse to cooperate, they can be put under investigation at any time" and that "she was the one who took [his] institutional job" (Doc. 95-1, p. 19). McKinley was released from administrative detention on September 26, 2012, which, he contends, was four-days beyond the thirty-day limit (Doc. 43, p. 8).

McKinley was called for a third investigatory interview on October 16, 2012, and he made it clear that he was being harassed and retaliated against for no reason other than the internal affairs officers trying to force him to become a confidential informant (Doc. 43, p. 8). McKinley was told by these officers that "he better just tell them what they wanted to know" (Doc. 43, p. 8). McKinley was again placed in administrative detention on October 25, 2012 (Doc. 43, p. 9). McKinley was in administrative detention at Menard from October 25, 2012, until his deposition on November 18, 2015 (when he anticipated he would be released from administrative detention within the next two

weeks) (Doc. 95-1, p. 58). McKinley was never issued a disciplinary ticket during his time in administrative detention (Doc. 43, p. 12).

While he was in administrative detention, McKinley was placed in a cell with no heat or hot water during the winter months, and there were no supplies to clean his cell, although it had dirt and rodent feces on the floor (Doc. 43, p. 9; Doc. 95-1, pp. 73-79). The cell conditions exacerbated McKinley's asthma, and he experienced difficulty breathing (Doc. 43, p. 9). Defendants Schoenbeck and Phelps made rounds in McKinley's cell house on numerous occasions, and when McKinley complained to Defendant Phelps about his living conditions, Defendant Phelps indicated that he would "have to just deal with it" (Doc. 43, p. 9). Defendant Schoenbeck usually ignored McKinley's complaints, but on one occasion, Defendant Schoenbeck told McKinley that he "should not have decided to come to administrative detention" (Doc. 43, p. 9).

On November 7, 2013, McKinley was questioned by Defendant Phelps. Defendant Phelps asked McKinley about a pending lawsuit filed by McKinley and remarked that "filing lawsuits will only make you stay in administrative detention longer" (Doc. 43, p. 10; Doc. 95-1, p. 25-28).

Subsequently, McKinley was placed in the step-down program to be released from administrative detention. In January or February of 2014, McKinley requested a marriage license request form, and placed his request form in outgoing mail directed to the chaplain (Doc. 95-1, pp. 48, 63). Defendant Schoenbeck received and reviewed all outgoing mail. After he saw McKinley's request, he said to McKinley, "Oh, so you're planning on getting married" (Doc. 95-1, p. 61). In April 2014, McKinley was removed

from the step-down program and placed back in the administrative detention wing, which limited his ability to submit his marriage request form (*see* Doc. 43, p. 10; *see* Doc. 95-1, pp. 63-64). McKinley testified that Defendant Schoenbeck placed him back on the administrative detention wing because he had written grievances and was trying to get his marriage approved (Doc. 95-1, pp. 63-64). McKinley concluded this after he asked Defendant Schoenbeck why he was being put back on the administrative detention wing, and Defendant Schoenbeck did not reply when McKinley asked if it was "because all of them grievances" (Doc. 95-1, p. 65).

On October 1, 2014, McKinley, while seated on a bench waiting to be taken back to his cell after meeting with a mental health counselor, was confronted by Defendant Phelps (Doc. 43, p. 10). Defendant Phelps repeatedly pushed McKinley in the back in an attempt to provoke McKinley, but McKinley remained sitting, despite the fact that the physical contact caused McKinley pain (Doc. 43, p. 10). In his amended complaint, McKinley indicated that Defendant Phelps' actions were attributable to his knowledge of McKinley's lawsuits (Doc. 43, p. 10).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc., v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material

facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress &Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 842 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

### Count One:   Retaliation claim against Defendants Hasemeyer, Lashbrook, Phelps, and Schoenbeck

McKinley's retaliation claim against Defendants Hasemeyer, Lashbrook, Phelps, and Schoenbeck is premised on Defendants' involvement in placing McKinley in administrative detention due to his failure to provide information regarding other inmates and declining to become a confidential informant. Defendants assert they are entitled to judgment as a matter of law on this claim, because McKinley's placement in administrative detention and consequent job loss did not violate the First Amendment and, in any event, they assert that they are entitled to qualified immunity.

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendant's decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). In order to establish a *prima facie* case, the plaintiff must produce evidence that his speech was at least a motiving factor in the defendant's decision to take retaliatory action. *Id.* "Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence." *Id.* "If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a 'necessary condition' of the plaintiff's harm, and the plaintiff has established the 'but-for' causation needed to succeed on his claim." *Id.*

McKinley's claim in Count One fails at the first hurdle. The Seventh Circuit recently found that inmates may be compelled to disclose information during internal investigations provided they are not punished for refusing to make self-incriminating statements without immunity. *Caffey v. Maue*, No. 15-3772, 2017 WL 659349 (7th Cir. Feb.

15, 2017). In *Caffey*, the inmate-plaintiff refused to provide information to correctional officers regarding a staff assault during an interview and, as a result, was placed in investigative segregation and, after his release from segregation, was transferred to a different institution. *Id.* at *1. The Seventh Circuit found that the inmate-plaintiff's speech (or lack thereof) was not protected and upheld the district court's dismissal of the plaintiff's First Amendment retaliation claim on this basis, noting that the plaintiff never hinted that answering the investigators' questions might incriminate him, therefore, he was not privileged to refuse to provide information. *Id.* at *2-3.

The Central District of Illinois also recently grappled with similar facts in *Clark v. Gipson*, finding that, although some First Amendment cases discuss the right "not to speak," the cases typically involve government-compelled ideological speech, and any such right does not extend to refusing to act as an informant as a condition of receiving a prison job. *Clark v. Gipson*, 13-cv-3012, 2015 WL 328966, *5 (C.D. Ill. Jan. 26, 2015). These cases are strikingly similar to this case, because the evidence, when viewed in the light most favorable to McKinley, establishes that he refused to become a confidential informant and provide information concerning other inmates. Notably the record is bereft of any evidence indicating that McKinley's refusal to provide information as requested was made for fear of self-incrimination.

Given the recent precedent in this Circuit, the Court finds that McKinley's refusal to become a confidential informant and provide information about other inmates in the series of interviews conducted with Defendants in 2012 is not protected speech. As such,

McKinley cannot establish the first requirement of his First Amendment claim, and Defendants are entitled to judgment as a matter of law as to Count One.

***Count Two:   Retaliation claim against Defendants Phelps and Schoenbeck***

McKinley's retaliation claim set forth in Count Two is based on actions taken by Defendants Phelps and Schoenbeck, including lengthening his placement in administrative detention, thwarting his plans to marry, and using excessive force against him, due to his filing of lawsuits and grievances. The Court discusses each alleged act of retaliation in turn, as set forth below.

<u>Defendant Phelps' and Schoenbeck's involvement in lengthening McKinley's placement in administrative detention</u>

McKinley asserts that Defendants Phelps and Schoenbeck retaliated against him for writing grievances and filing lawsuits by lengthening his stay in administrative detention. With regard to this claim, the evidence, when viewed in the light most favorable to McKinley, establishes that on November 7, 2013, Defendant Phelps interviewed McKinley, while he was in administrative detention, asked about a pending lawsuit, and remarked that "filing lawsuits will only make you stay in administrative detention longer" (Doc. 43, p. 14). Subsequently, on January 25, 2014, McKinley was denied release from administrative detention "without any justification" (Doc. 43, p. 14). Further, sometime prior to McKinley's interview with Defendant Phelps (McKinley fails to indicate when), he was placed in the administrative detention step-down program and then abruptly removed in April 2014, because he filed grievances against Defendant Schoenbeck, who read McKinley's outgoing mail (Doc. 43, p. 14). McKinley asserts that

Defendant Schoenbeck was the officer in charge of moving inmates through the step-down program and, when McKinley asked this Defendant why he was being put back in "the wing," he told McKinley "you know why" and did not respond when McKinley asked if it was "because of all of them grievances."

As set forth above, in order to prevail at this stage in the litigation on his First Amendment retaliation claim against Defendants Phelps and Schoenbeck, McKinley must show "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendant's decision to take the retaliatory action." *Bridges*, 557 F.3d at 546 (citing *Woodruff*, 542 F.3d at 551) (other citations omitted).

Importantly, in order to make his *prima facie* case at this stage, McKinley's evidence must be sufficient to show that the filing of his lawsuits and grievances were at least motivating factors in Defendants' alleged retaliatory action—increasing the time McKinley spent in administrative detention by way of influencing the denial of his release from administrative detention or his participation in the step-down program. McKinley may meet his burden by presenting either direct or circumstantial evidence. *Kidwell*, 679 F.3d at 965-66. Direct evidence is evidence which will prove a particular fact without reliance upon inference or presumption, while circumstantial evidence is evidence from which a trier of fact may infer that retaliation occurred, including suspicious timing or ambiguous oral or written statements. *Id.* (quotations and citations omitted).

Here, McKinley makes the inference that Defendant Phelps lengthened his stay in administrative detention based on Defendant Phelps' comment on November 7, 2013 that "filing lawsuits will only make you stay in administrative detention longer" and McKinley's subsequent denial of release from administrative detention on January 25, 2014. Even when viewed in the light most favorable to McKinley, this evidence is insufficient for McKinley to make his *prima facie* case. First, the record is bereft of any evidence indicating that Defendant Phelps was involved in any decisions concerning McKinley's continued placement in administrative detention, let alone the decision to deny his release from this placement on January 25, 2014. Indeed, Defendant Phelps has attested that he has never served on the Administrative Detention Committee at Menard, and he has never had the authority to place an inmate in administrative detention status or continue an inmate's administrative detention placement (Affidavit of Lance Phelps, Doc. 95-4, ¶¶ 10-12). Moreover, while McKinley may argue that the timing of these events is suspect, the Seventh Circuit has held that a plaintiff's reliance on suspicious timing to establish a *prima facie* retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Further, the adverse action must follow "close on the heels" of the protected expression, and the plaintiff must show that the person who took the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 969. Here, the Court is not convinced that the alleged retaliatory action followed "close on the heels" of any protected expression and, more importantly, there is simply a lack of evidence that Defendant Phelps was actually involved in the adverse action.

The Court finds similarly with respect to Defendant Schoenbeck. Again, McKinley infers that Defendant Schoenbeck removed McKinley from the step-down program because he did not reply when McKinley asked if it was "because of all them grievances" he (McKinley) had filed. Based on the evidence before the Court, it is not clear when Defendant Schoenbeck made this comment in relation to when McKinley was removed from the step-down program. It also is not apparent what role Defendant Schoenbeck had with regard to the review of McKinley's continued placement in administrative detention and the step-down program. In any event, assuming McKinley has met his burden to establish a *prima facie* claim for retaliation (of which the Court is skeptical), Defendant Schoenbeck has sufficiently rebutted the causal inference raised by McKinley's evidence.

Specifically, Defendant Schoenbeck attests that McKinley was placed in administrative detention because multiple confidential informants reported McKinley to be an STG leader who used his influence for staff assaults and, as such, the placement was needed for the safety and security of Menard (Affidavit of Joshua Schoenbeck, Doc. 95-5, ¶¶ 8-9). Defendant Schoenbeck's affidavit is further supported by McKinley's administrative detention records, which indicate that McKinley's placement in administrative detention was regularly reviewed, and the decision to continue his placement in the program was determined by both the Chairperson of the administrative detention committee and the warden (*see* Doc. 50-1, pp. 9-34). Thus, the Court finds that McKinley has failed to provide sufficient evidence to conclude that he would not have been removed from the step-down program and continued his

placement in administrative detention absent a retaliatory motive by Defendant Schoenbeck.

### Defendant Phelps' use of excessive force against McKinley

In Count Two of his complaint, McKinley also asserts that Defendant Phelps retaliated against him due to his writing grievances and filing lawsuits by using excessive force against him. With regard to this claim, the evidence, when viewed in the light most favorable to McKinley, establishes that on October 1, 2014, while McKinley was seated outside the mental health counselor's office, Defendant Phelps confronted McKinley and tried to get him to react to his verbal and physical provocations (Doc. 43, p. 15). Another correctional officer, Officer Anthony, witnessed this incident, and when Officer Anthony asked who McKinley was, Defendant Phelps said in reference to McKinley, "Oh he's a bitch" (Doc. 43, p. 15).

This evidence is insufficient for McKinley to make his *prima facie* case for retaliation. Notably, McKinley has produced no evidence that these events were spurred by a retaliatory motive. While McKinley asserts that Defendant Phelps said he was a "bitch," this reference is devoid of any indication that Defendant Phelps was engaging in any actions due to McKinley exercising an activity protected by the First Amendment. The Court notes that the only comment attributed to Defendant Phelps related to a First Amendment activity was his comment made on November 7, 2013 (discussed above). Because the comment was made almost one year prior to the incident on October 1, 2014, the Court finds that was not a motivating factor for the events described. As such, the

Court does not find that the October 1, 2014 incident involving Defendant Phelps was a retaliatory act.

<u>Defendant Schoenbeck's thwarting McKinley's plans to marry</u>

Additionally, in Count Two McKinley claims that Defendant Schoenbeck thwarted his plans to marry in retaliation for his filing lawsuits and grievances. In support of this claim, McKinley asserts that he submitted a request to receive a marriage license form and, as Defendant Schoenbeck's job was to read all outgoing mail, Defendant Schoenbeck intercepted and read McKinley's request. After McKinley's request was submitted in January 2014, McKinley asserts that Defendant Schoenbeck removed him from the step-down program in April 2014, thereby hindering his ability to get married.

The Court is not inclined to engage in an extensive analysis on this claim, because McKinley's evidence is simply insufficient to withstand Defendant Schoenbeck's motion for summary judgment. First, McKinley has again failed to produce any evidence demonstrating that Defendant Schoenbeck had any control over his removal from the step-down program in April 2014. Moreover, the record is bereft of any evidence indicating that Defendant Schoenbeck, to the extent he was involved in McKinley's removal from the step-down program, was motivated to do so to ensure McKinley would not be able to marry as a result of his filing grievances or lawsuits. The Court will not pile inference upon inference without any evidence and accept the conclusory allegations upon which McKinley has rested. At the summary judgment stage, conclusory allegations are simply insufficient, because, as noted above, this is the "put

up or shut up moment in a lawsuit." *Steen*, 486 F.3d at 1022. Defendants Phelps and

Schoenbeck are entitled to judgment as a matter of law as to Count Two.

***Count Three:  Conditions of confinement claim against Defendants Phelps and Schoenbeck***

McKinley brings a conditions of confinement claim against Defendants Phelps

and Schoenbeck for their purported failure to rectify the unsanitary and unclean

conditions in administrative detention.

Although the Eighth Amendment prohibits "cruel and unusual punishment" of a

prisoner, not all prison conditions trigger Eighth Amendment scrutiny. *James v.*

*Milwaukee Cty.*, 956 F.2d 696, 699 (7th Cir. 1992). Only conditions of confinement that

deny an inmate of "basic human needs" or "the minimal civilized measure of life's

necessities," such as food, medical care, or sanitation, violates the Eighth Amendment.

*Id.*; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996) (citing *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981)). In *Wilson v. Seiter*, the Supreme Court indicated that

courts evaluating claims of unconstitutional conditions of confinement must consider

(1) whether the defendant prison officials acted with the requisite state of mind (the

subjective component) and (2) whether the alleged deprivations were sufficiently serious

to rise to the level of a constitutional violation (the objective component). *Wilson v. Seiter*,

501 U.S. 294 (1991). In other words, to establish his Eighth Amendment claim, McKinley

must show that he was subjected to conditions that denied him "the minimal civilized

measure of life's necessities" and that Defendants acted with a culpable state of mind.

*Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Famer v. Brennan*, 511 U.S. 825, 847

(1994) ("[A] prison official may be held liable under the Eighth Amendment for denying

humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

The evidence, when viewed in the light most favorable to McKinley, establishes that, while he was in administrative detention, McKinley was forced to live in a cell with no heat, hot water, or sanitary supplies for months. McKinley had a window that was not working and would not close completely, and there was dirt and rodent feces on the floor. At his deposition, McKinley rested on the allegations in his verified second amended complaint as to when and what he discussed with Defendants Phelps and Schoenbeck related to these conditions. In his second amended complaint, McKinley asserts that "on numerous occasions" Defendants Schoenbeck and Phelps came to McKinley's living unit for observation and supervision rounds (Doc. 43, p. 17). McKinley further asserts that when he complained to these Defendants "about the living conditions," Defendant Phelps replied, "[s]o I guess you do not like my administrative detention cells, huh? You gonna have to just deal with it," and Defendant Schoenbeck ignored his complaints, but once told McKinley that "he should not have come to administrative detention" (Doc. 43, p. 17).

At the outset, the Court finds that the living conditions McKinley complains of trigger Eighth Amendment scrutiny. *See Gillis*, 468 F.3d at 493 (citing *Lewis v. Lane*, 816 F.2d 1165 (7th Cir. 1987) ("an allegation of inadequate heating may state an Eighth Amendment violation"); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state

must provide … reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing).")).

McKinley has failed to produce sufficient evidence, however, for a reasonable jury to conclude that Defendants Phelps and Schoenbeck were deliberately indifferent to these conditions. At his deposition, McKinley testified that there were times during his three years in administrative detention that his living conditions were "okay" (Doc. 95-1, p. 72). Although McKinley failed to elaborate, he testified that the conditions in his cells in C wing and north 2-7 gallery were different, at least insofar as there was no window in his cell on seven gallery, which, according to McKinley, was a better condition (Doc. 95-1, p. 73). This testimony, when coupled with McKinley's verified complaint, causes the Court to be unable to discern when he suffered from the conditions specified in his second amended complaint and when the conditions in administrative detention were "okay." As McKinley has not provided any particular details establishing what, in particular, he complained about to Defendants Schoenbeck and Phelps, when the complaints were made, and when, in relation to making these complaints, he was transferred to different cells while in administrative detention with living conditions that were "okay," McKinley has failed to demonstrate that Defendants Phelps and Schoenbeck acted with deliberate indifference by failing to address McKinley's complaints. For these reasons, Defendants are entitled to judgment as a matter of law as to Count Three.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment (Doc. 94) filed by Defendants Hasemeyer, Lashbrook, Phelps, and Schoenbeck. McKinley's claims are **DISMISSED with prejudice**. The case is **CLOSED**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## NOTICE

If McKinley wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If McKinley chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if McKinley files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if McKinley wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court

should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by McKinley showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If McKinley chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If McKinley cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP

motion must set forth the issues McKinley plans to present on appeal. *See* FED. R. APP. P.

24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial

filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments

until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:   March 29, 2017**

**s/ Nancy J. Rosenstengel_____**
**NANCY J. ROSENSTENGEL**
**United States District Judge**